No. 2943

Second Circuit

—

**MEREDITH v. TUBRE**

—

(March 12, 1929.  Opinion and Decree.)

—

Carstarphen and Garland, of Shreveport, attorneys for plaintiff, appellee.

Scheen and Blanchard, of Shreveport, attorneys for defendant, appellant.

Wilkinson, Lewis and Wilkinson, of Shreveport, attorneys for warrantor.

ODOM, J.  On May 8, 1908, the plaintiff, W. L. Meredith, purchased from A. S. Miller, lot 27 of block 12 of the Fairfield Heights Subdivision, of the Parish of Caddo.  Some eight years later, the Village

of South Highlands was incorporated, under Act 136 of 1898, and the lot above described was included within the corporate limits of said village.

On July 30, 1920, plaintiff's property was sold at tax sale by the Tax Collector of the Village of South Highlands for taxes said to be due the village for the year 1919, at which tax sale U. C. Addison, E. M. Besse and 'J. H. Anderson were the purchasers. On February 12, 1921, Addison, Besse and Anderson sold the property to J. V. Wilkinson who in turn sold it, on October 3, 1921, to L. C. Tubre, who on the date this suit was filed was in possession of it.

The present suit was filed by Meredith on March 23, 1923, less than three years from the date of the tax sale, against Tubre to set aside the purported tax sale on the following grounds, to-wit:

1. That no budget was adopted by the Village of South Highlands for the year 1919;

2. That no taxes were levied by the Village of South Highlands for the year 1919, against plaintiff's property or any other property in said village;

3. That the property was advertised to pay an interest charge of two per cent per month during the year following the sale; and

4. That no notice was ever served on the plaintiff as to the creation of the Village of South Highlands and no notice was ever given him of the delinquency of taxes for the year 1919, due on his property.

The defendant, Tubre, in answer, denied all the above allegations and alleged that the sale of plaintiff's property by the Tax Collector was valid and that he owned said property under valid title and in good faith, and he called his vendor, Wilkinson, in warranty. In the alternative, he asked that in case the Court should hold that said tax sale was void, he have judgment against Wilkinson for $1100.00, the price which he had paid for the property, and for judgment against the plaintiff for the value of the improvements which he had placed upon the lot in good faith.

Wilkinson, the warrantor, in answer adopted the allegations set out in Tubre's answer, insofar as he has asserted the validity of the tax sale, and asked that the sale be upheld. In addition, he alleged that he had purchased the property in good faith and in case the Court should hold that the tax sale was void, that he have judgment against the plaintiff for the value of the improvements which he had placed upon the property.

There was judgment in the lower court for plaintiff decreeing the purported tax sale null and void, and recognizing him as owner of the property; and judgment for Tubre against plaintiff for $379.90, the value of improvements which he had placed on the lot, and permitting him to retain possession of said lot and improvements until that sum was paid; and judgment for Wilkinson against plaintiff for $800.00, the value of improvements which he had placed on the lot, and allowing him to retain possession of the lot and the improvements until said sum is paid by plaintiff, the Court holding that Wilkinson was in good faith; and further judgment for Tubre against Wilkinson for $1100.00, the purchase price of the property.

Tubre did not appeal. Wilkinson appealed from the judgment only insofar as it declared the tax sale null and void. The plaintiff moved in this Court to amend

the judgment by rejecting Wilkinson's claim against him for improvements.

## OPINION.

Plaintiff alleges that the purported sale of his property by the Tax Collector of the Village of South Highlands for taxes alleged to be due the village for the year 1919 was null and void for the reason, among others, that no taxes were levied by said village for that year. If, as a matter of fact, the municipal authorities omitted to levy any taxes for that year, such omission is fatal because without an assessment there were no taxes due the municipality, and, if none were due, the Tax Collector proceeded without any warrant for making the sale.

Guillory vs. Elms, 126 La. 560, 52 So. 767.

Erwin et al. vs. Town of Franklinton, 130 La. 827, 58 So. 587.

Counsel for Wilkinson, appellant, do not argue against this, but say in brief:

"We believe that the evidence shows that a resolution was adopted by the Village of South Highlands levying a five mill tax for the year 1919,"

but the record fails to support counsel's conclusions.

On the trial of the case, plaintiff proved that the records of the proceedings of the Village Council of the Village of South Highlands do not disclose that any ordinance or resolution was ever passed levying a tax on the property of that Village for the year 1919; and further, that there is no minute record of the passage of such ordinance. It was admitted that Mrs. S. V. Rankin had been Secretary of the Town Council of that Village from the year 1917, down to the date of the trial, and that, if she were present, she would swear that she had searched her records and that there was not among them any written ordinance adopting a budget of expenses for the Village of South Highlands for the year 1919; and no ordinance levying a tax for that year; and further, that she would swear, if present, that to the best of her recollection, the matter of levying the tax was discussed in a regular meeting of the Village Council, and that W. T. Simpson, Tax Collector, was instructed to have the Assessor of the Parish of Caddo extend on the rolls a tax of five mills on the dollar, and to make collection of the taxes. Mr. Elias Goldstein testified that he had been a member of the Village Council ever since its organization and that, as a lawyer, he knew it was necessary that the Village should pass a formal ordinance levying taxes, and that he was under the impression that the Village did so each year; however, he had no independent recollection of an ordinance having been passed levying the taxes for the year 1919. He said, furthermore, that he had had an investigation made of the minute book, and had received the information from Mrs. Rankin, the Village Secretary, that the minute book made no reference to the levying of any taxes for that year and made no reference to the adoption of a tax ordinance. We quote the following from Mr. Goldstein's testimony:

"Q. Now, you state you can't say positively that any budget or any ordinance, written ordinance or resolution, adopting a budget for levying taxes for the years 1918 and 1919 were ever adopted?

"A. No, sir, I don't state that a formal resolution or ordinance was ever passed adopting either the budget or fixing the tax rate. I can state, however, that a budget was generally figured out each year and the tax rate figured out each year and the Treasurer instructed to levy, at that particular rate."

On being asked if he thought in case an ordinance levying the taxes and adopting a budget had been passed, and Mrs. Rankin, the Secretary, had failed to include that in her minutes, her omission would have been detected at the next meeting, he replied:

"No, I don't, and particularly at that time,. Mr. Garland. It would now, but at that time South Highlands was pretty much like a very large family; almost everybody worked together out there—in fact, Mr. Steere and I often used to finance the Village. It was always doing something beyond its financial ability and beyond its legal powers."

He was asked:

"Sometimes it didn't comply strictly with the legal requirements of law?"

And he said:

"No, sir. We just went ahead and financed it and let it go at that."

He further said:

"In regard to a budget or an ordinance, as I say, I was distinctly under the impression, and would have so sworn today that we had done it, if I hadn't examined the minutes and found that they were not there.

\* \* \*

"Q. You would not undertake to tell the Court positively that an ordinance was passed levying taxes?

"A. No, sir, I just said I would not, but I can say it was discussed each and every year."

Mr. Simpson testified that he had been secretary-treasurer and ex-officio tax collector for the Village of South Highlands ever since it was incorporated in 1916, and that he collected taxes for the Village for the year 1919 under authority of the council; that the council instructed him to go ahead and collect taxes at a five mill rate. On being asked if there was any ordinance adopted levying the tax, he said that the matter was taken up with Mrs. Rankin, the Clerk, and she was never able to locate any ordinance. On being asked if he was reasonably certain that a resolution was passed by the Village Council, he said:

"Yes, sir, otherwise I would not have made any collection of the taxes."

Mr. Simpson further testified as follows:

"I was present at a meeting when the ordinance was passed instructing me to collect the taxes on the five mill basis."

Mr. Simpson's attention was called to the fact that the plaintiff had brought suit to annul the tax sale made by him of Lot 27 of Block 12, and was asked under what authority he attempted to force collection of the taxes against that property, and he said:

"Well, I collected that under authority of the Council, the way they instructed me, to go ahead and collect them at five mill rate."

There is no suggestion that the minutes of the various meetings of the Village Council, as kept by the Secretary, Mrs. Rankin, do not correctly state all the proceedings which transpired at the meetings of the Council. It is inconceivable that, if an ordinance had been introduced levying taxes and had been adopted on motion, the minutes as kept by the clerk would not show that fact. We have no doubt that the matter of collecting taxes for the Village was discussed, as stated by Mr. Goldstein, at the meetings of the Council. But it is perfectly clear that the Village Council did not go through the formality of levying taxes by resolution or ordinance. This formality was indispensable to the validity of a tax levy.

It is necessary to discuss the other grounds of nullity. It may be well to state, however, that it was proved beyond

question that Meredith, the alleged tax debtor, paid the parish and state taxes levied against his property and that he did not know that the Village of South Highlands had been incorporated and that his property was included therein; and further, that no delinquency notice was ever served upon him by the Village Tax Collector.

At the time the property was sold and for some time prior thereto, the plaintiff lived in Pineville, Rapides Parish. The collector of parish and state taxes notified him there and he remitted his taxes. It happened that there was a man named "W. L. Meredith" who lived in South Highlands. He testified that a delinquency notice was served on him through the mail that the taxes on Lot 27 of Block 12, had not been paid and that he informed the Village Tax Collector that he did not own said property. He testified, however, that that notice was served on him about three years previous to the date on which he was testifying—which was July 11, 1924. According to his testimony, that notice was received in 1921, a year after the property was sold. The Tax Collector had no records to show and could not recall when he mailed out 'notices. While the Tax Collector testified that he always mailed notices of delinquency previous to making the collections, he does not swear nor is there any testimony to show positively that a notice of delinquency was mailed prior to the sale of this property in August, 1920.

For the above stated reasons, the purported tax sale of plaintiff's property was an absolute nullity. Counsel for appellee asks that the judgment be so amended as to reject Wilkinson's demands for the improvements which he placed upon the property. Wilkinson, we think, was in

good faith. He purchased the property on the faith of the tax title. The deed made by the Tax Collector seems to be complete and valid in form. It was duly recorded in the notarial records. While Wilkinson purchased the lot previous to the expiration of one year from the date on which the property was sold for taxes and under a deed reciting no warranty, it appears that he did not place the improvements on the property until after the lapse of one year. He was guilty of no fraud. The record title was *prima facie* good. It has been repeatedly held that one who purchases on the faith of a tax title and who is guilty of no fraud is a good faith holder.

Foreman et al. vs. Thos. Hinchcliffe et al., 106 La. 225, 30 So. 762.

West vs. Negrotto, Jr., 52 La. Ann. 381, 27 So. 75.

Font et al. vs. Land & Improvement Co., 47 La. Ann. 275, 16 So. 828.

Davenport et al. vs. Knox et al., 35 La. Ann. 486.

Giddens vs. Mobley et al., 37 La. Ann. 417.

Stafford vs. Twitchell et al., 33 La. Ann. 520.

The improvements which Wilkinson placed upon the property consisted of a two-room house which is separable from the lot. Even if he had placed the house there in bad faith, he is entitled to recover the value thereof if the plaintiff elects to keep it.

Quaker Realty Company vs. Bradbury et al., 123 La. 20, 48 So. 570; and authorities there cited.

Plaintiff, by written stipulation placed in the record, has elected to keep Wilkinson's improvements, so that if Wilkinson had been in bad faith, as contended by

plaintiff, he must pay for the house, having elected to keep it.

For the reasons assigned, the judgment appealed from is affirmed.