STATE OF LOUISIANA, Through ANA-
COCO–PRAIRIE STATE GAME AND
FISH COMMISSION
v.
KIRBY LUMBER CORPORATION.

Civ. A. No. 7515.

United States District Court
W. D. Louisiana,
Lake Charles Division.

Oct. 24, 1960.

Jack P. F. Gremillion, Atty. Gen., W. R. Jackson, Jr., Leesville, La., for plaintiff.

Cavanaugh, Hickman, Brame & Holt, Lake Charles, La., for defendant.

HUNTER, District Judge.

Proceeding under the general expropriation laws of Louisiana [1], plaintiff filed in State Court on August 5, 1959 this action to expropriate 912.45 acres of land located in Vernon Parish, Louisiana. The suit was removed to this Court on the grounds of diversity. A motion to remand was filed and denied. Plaintiff insists that this Court erred in not remanding. This issue of jurisdiction, a close one, was resolved by a previous decision in Civil Action No. 7429.

The only issue now is just compensation. The action having been submitted for decision to the Court, sitting without a jury, and the Court having considered the pleadings, the stipulations, the exhibits, and the testimony of the witnesses, hereby makes and enters the following findings of fact and conclusions of law, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, 28 U.S. C.A.

### Findings of Fact

(1) Kirby Lumber Corporation is a corporation organized and existing under the laws of the State of Delaware; its principal office and place of business is in the State of Texas.

(2) Anacoco-Prairie Game and Fish Commission is a political corporation possessing a corporate entity and is domiciled in this division and district of the State of Louisiana.

(3) Kirby is the owner of the 912.45 acres of land, the value of which is in excess of $10,000.

(4) There is excepted and reserved from this taking all of the oil, gas and other minerals. These minerals are reserved to Kirby in perpetuity and play no part here.

(5) The total value of the merchantable timber growing, standing, lying or being upon the land at the time of the

1. LRS Title 19, Sections 1–13, inclusive. Suit is also specially authorized by Act 277 of the Legislature of the State of Louisiana, 1948, Section 5, as amended.

institution of the suit was $115,039.41 (Stipulation 1).

(6) Pursuant to agreement, Kirby has until 12:00 o'clock midnight October 1, 1961 within which to remove all of the timber it wishes from these lands. A credit of $115,309.41 towards any judgment is to be given for this privilege.

(7) Plaintiff offered the testimony of four qualified expert witnesses who had walked over and examined the acreage. Their composite estimates of the value of the land, less timber and improvements, averaged approximately $25 per acre. On the basis of this testimony and the stipulated value of the timber, their estimates for the total value of the taking approximate $135,845.66. These opinions are relevant.

(8) Plaintiff introduced certified copies of all the market transactions filed for record in the Clerk's office of Vernon Parish in the last two years covering all property North of Louisiana Highway 28 and West of U. S. Highway 171 (approximately the entire NW¼ of Vernon Parish), together with a capitulation prepared by the Clerk of Court and identified by the witness, K. L. Winfree, as Exhibit P–3. These transactions vary greatly in their comparability but are to be considered.

(9) Of the approximate 300 odd landowners in the upper Anacoco Lake, practically all landowners signed a voluntary warranty deed for $30 per acre being permitted to remove their improvements and timber and to reserve their minerals. On the basis of this evidence and the stipulated value of the timber, the total value of the taking approximates $143,-571.83, which would constitute just compensation under plaintiff's annual growth formula, if capitalized, at six per cent interest per annum.

(10) Mr. Dudley Stone, as Agent for the Kirby Lumber Company, rendered these lands for assessment purposes at $5 per acre as "cut over lands" and "wood lands." Part of the land was assessed at $5.00 per acre and part at $6 per acre.

(11) Mr. W. J. Todd, an expert witness for defendant, analyzed 42 Vernon Parish transactions which he listed as "relevant transactions" and arrived at an average sale value per acre of $48 and an average amount of merchantable timber thereon at $14.77, or an average value for the land, less the merchantable pine and hardwood timber, of $33.23. The land involved in the transactions referred to by Mr. Todd as "relevant sales" appear on the evidence to be just as good and just as valuable as the lands owned by Kirby, when the agreed value of the timber is taken into consideration or deducted.

(12) Defendant's experts, Bennett and Stanley, applied an annual growth income approach to arrive at the property's market value. This is the way they did it:

(a) They considered the quality, quantity and species and values of the timber situated upon these lands immediately prior to the filing of the suit.

(b) Increment borings from the trees on the land were taken, analyzed and growth rate determined.

(c) The net annual growth rate, as determined by the United States Forest Service, Forest Survey Release 75, dated April, 1955, was applied by Bennett. Stanley determined the annual growth rate from his study and analysis of the increment borings from the trees.

(d) Ten per cent was added because Bennett concluded from his knowledge of the lands and the stand of the timber situated thereon that they were at least ten per cent better lands than the average in Southwest Louisiana covered by the Forest Service Bulletin. These lands were, Bennett concluded, peculiarly adapted to producing a rapid growth of timber.

(e) The net annual growth on all of the timber on these lands was determined to be worth $9,709.25, or $10.64 per acre per year.

(f) From this gross income represented by this net annual growth, the sum of $1,094.94 yearly was deducted for an-

nual expenses (fire protection, taxes, administration, other losses, etc.).

(g) This resulted in Bennett and Stanley concluding that the net annual income was $8,614.31, or $9.44 per acre.

(h) This figure was capitalized at four per cent and defendant's experts thus reached the conclusion that the expropriated property was worth $215,357.75, or $236 per acre.

(12) Using the same figures offered by Kirby's witnesses and the same formula, by capitalizing at different rates, the values change remarkably. This computation made for us by Kirby's attorneys and not contested is as follows:

| Capital-ized Rate | Net Annual Income ($) | Net Annual Income Per Acre | Total Value of Land ($) | Per Acre Value of Land ($) |
|---|---|---|---|---|
| .0400 | 8,614.31 | 9.44 | 215,357.75 | 236.00 |
| .0425 | 8,614.31 | 9.44 | 202,689.65 | 222.14 |
| .0450 | 8,614.31 | 9.44 | 191,429.11 | 209.80 |
| .0475 | 8,614.31 | 9.44 | 181,353.89 | 198.76 |
| .0500 | 8,614.31 | 9.44 | 172,286.20 | 188.82 |
| .0525 | 8,614.31 | 9.44 | 164,082.09 | 179.83 |
| .0550 | 8,614.31 | 9.44 | 156,623.82 | 171.65 |
| .0575 | 8,614.31 | 9.44 | 149,814.09 | 164.19 |
| .0600 | 8,614.31 | 9.44 | 143,571.83 | 157.35 |

(13) The sustained net annual income worth of timberlands is a factor that would most certainly be considered by a prospective purchaser of the timberlands and is material to the extent that it helps to determine the fair market value of the land.

## Conclusions of Law

(1) The Court's jurisdiction is based on diversity of citizenship between the parties and requisite jurisdictional amount. 28 U.S.C.A. § 1332.

(2) The measure of just compensation to be awarded in an expropriation proceeding is the market value of the property taken—that is, the price that would be paid in a voluntary sale between a willing seller and a willing buyer. Louisiana Power and Light Co. v. Simmons, 229 La. 165, 85 So.2d 251.

(3) The time at which this market value is to be determined is the time of the filing of the suit. State of Louisiana v. Landry, 219 La. 721, 53 So.2d 908.

(4) In determining market value, sales of similar or comparable properties in the vicinity are to be considered. Louisiana Power and Light Co. v. Simmons, supra.

(5) The assessed valuation of land is not controlling but may be considered in determining the market value of land expropriated. Louisiana Highway Commission v. Guidry, 176 La. 389, 146 So. 1; City of New Orleans v. Larroux, 203 La. 990, 14 So.2d 812; State v. Barbe, 209 La. 185, 24 So.2d 372 [2].

(6) Here, as in most cases, opinions of experts are relevant, because sales on the market vary greatly in their comparability, and strictly speaking, no piece of land is identical to another. The opinions expressed by those tendered as experts here as to the value of the land are to be considered. U. S. v. 1040.30 Acres of Land, D.C., 144 F.Supp. 199, and cases cited therein.

(7) The sustained net annual income derivable from the property is ma-

2. We have given *very* little consideration to this fact.

terial to the extent that it assists the Court in determining the fair market value of the land taken. Rapides Parish School Board v. Nassif, 232 La. 218, 94 So.2d 40; Housing Authority of New Orleans v. Persson, 203 La. 255, 13 So. 2d 853; Louisiana Highway Commission v. Paciera, 205 La. 784, 18 So.2d 193.

(8) In determining market value, each case must be considered in the light of its own facts, and every element that can fairly enter into the question of value and which an ordinarily prudent businessman would consider before making a purchase should be considered. 29 C.J.S. Eminent Domain § 136, p. 971.

### Conclusion

Giving due consideration to all such factors, namely:

(a) The net annual income as determined by defendant's witnesses;

(b) the forty-two Vernon Parish transactions marked by defendant's witness Todd as "relevant transactions;"

(c) the opinions of the expert witnesses who walked over and examined the acreage, and the transactions to which they made reference; and

(d) the assessed value of the land; the Court concludes that an award of $148,500 as just compensation for the property taken is fair and reasonable [3].

Plaintiff is to pay taxable costs of Court. This is not to include expert witnesses' fees (Henkel v. Chicago, St. P. M. & O. R. Co., 284 U.S. 444, 52 S. Ct. 223, 76 L.Ed. 386).

Several Louisiana Supreme Court cases are to the effect that legal interest is due in expropriation proceedings from the date of judicial demand. Weiss v. Board of Commissioners, 1959, 238 La. 419, 115 So.2d 804; Gravity Drainage District, No. 1 of Rapides Parish v. Key, 1958, 234 La. 201, 99 So.2d 82. A later decision (A. K. Roy, Inc. v. Board of Commissioners, 1960, 238 La. 926, 117 So.2d 60) repudiates this view

and finds that the authorities relied on in Weiss did not support the erroneous conclusion reached there.

Under the express provisions of the LSA–Civil Code Article 1938, interest becomes payable from the time the debt is due, which in this case is the date defendant appropriates the property (A. K. Roy, supra). Here, that will be the day that a final judgment is signed by this Court.

Counsel will prepare and submit such a judgment forthwith.

---

3. Defendant is entitled to a credit of $115,309.41, as per Stipulation 1.